UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

WILLIAM NOAH YOUNG,           )
                              )
            Plaintiff,        )
                              )
v.                            )       No. 3:12-CV-245
                              )       (VARLAN/SHIRLEY)
CAROLYN W. COLVIN,            )
Acting Commissioner of Social Security,   )
                              )
            Defendant.        )

## MEMORANUDM AND ORDER

Before the Court is Plaintiff's Motion for Judgment on the Pleadings and Brief in

Support [Docs. 9, 10] and Defendant's Motion for Summary Judgment and Memorandum

in Support [Docs. 14, 15]. Both parties have also filed supplemental briefs [Docs. 23,

24], which the Court has considered. In addition, the parties submitted several other

briefs [Docs. 16, 17, 18-1] on a particular issue discussed below, which the Court has

considered as well. Plaintiff William Noah Young ("Plaintiff") seeks judicial review of

the decision by Administrative Law Judge ("ALJ"), the final decision of the Defendant

Carolyn W. Colvin, Commissioner of Social Security ("the Commissioner").

On May 26, 2009, the Plaintiff filed an application for a period of disability and

disability insurance benefits claiming a period of disability, which began on March 28,

2009 [Tr. 119-20]. After his application was initially denied and denied again upon

reconsideration, the Plaintiff requested a hearing [Tr. 85-86]. On January 12, 2011, a

hearing was held before an ALJ to review the Plaintiff's claim [Tr. 35-63]. On February

1, 2011, the ALJ found that the Plaintiff was not disabled. The Appeals Council denied

the Plaintiff's request for review; thus, the decision of the ALJ became the final decision

of the Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

## I.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since March 24, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: s/p Thoracic Outlet Syndrome, Horner's Syndrome and a neck disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with only occasional postural activities and overhead reaching bilaterally. He is precluded from climbing ropes, ladders, or scaffolds. He is limited to no more than frequent handling and fingering with the right upper extremity and he should avoid concentrated exposure to hazards.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565).

7. The claimant was born on January 1, 1962[,] and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 24, 2009, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 24-29].

## II.    DISABILITY ELIGIBILITY

To qualify for SSI benefits, a plaintiff must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202.  An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability.  *See* 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

3

period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An

individual shall be determined to be under a disability only if his physical and/or mental

impairments are of such severity that he is not only unable to do his previous work, but

also cannot, considering his age, education, and work experience, engage in any other

kind of substantial gainful work which exists in the national economy, regardless of

whether such work exists in the immediate area in which he lives, whether a specific job

vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C.

§§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must
be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from
a severe impairment that has lasted or is expected to last for a continuous
period of at least twelve months, and his impairment meets or equals a
listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past
relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past
relevant work, if other work exists in the national economy that
accommodates his residual functional capacity and vocational factors (age,
education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §

404.1520).

4

A claimant bears the burden of proof at the first four steps. *Id.* The burden of proof shifts to the Commissioner at step five. *Id.* At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing

judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters*, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Wilson*, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. *See id.* at 547.

6

On review, Plaintiff bears the burden of proving her entitlement to benefits. *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

## IV.    POSITIONS OF THE PARTIES

The Plaintiff asserts that the ALJ committed two errors [Doc. 10 at 10]. First, he argues that the ALJ erred in his treatment of Dr. Cassada's opinion [*Id.* at 10-17]. Second, the Plaintiff argues that the ALJ failed to analyze the proper statutory factors before making a credibility determination [*Id.* at 18-19]. In addition, the Plaintiff asserts that new and material evidence submitted to the Appeals Council warrants remand [*Id.* at 19-22].

The Commissioner responds that substantial evidence supports the ALJ's evaluation of Dr. Cassada's opinion and the ALJ's adverse credibility finding [Doc. 15 at 4-17]. The Commissioner also argues that the Plaintiff has not shown good cause for submitting new evidence, nor has he shown that the additional evidence is new or material [*Id.* at 19-21].

## V.    ANALYSIS

The Court will address each of the Plaintiff's arguments in turn.

### A.    David Cassada, M.D.

The Plaintiff argues that the ALJ failed to address Dr. Cassada's January 5, 2011 opinion and that the ALJ erred when he gave "no weight" to Dr. Cassada's May 22 "Physical Capacity Evaluation" [*Id.* at 10-17]. The Commissioner responds that the

7

January 5, 2011 opinion was not properly before the ALJ and that the ALJ's decision shows that he gave reasons for assigning Dr. Cassada's May 22 opinion no weight [Doc. 15 at 5-7].

The Court will first analyze whether the ALJ was required to consider Dr. Cassada's January 5, 2011 opinion and then address whether the ALJ gave good reasons for assigning Dr. Cassada's May 22 opinion no weight.

### 1.    January 5, 2011 Opinion

On January 5, 2011, Dr. Cassada completed a form discussing the severity of the Plaintiff's condition. [Tr. 530-32].   Dr. Cassada stated that the Plaintiff's condition commenced in March 2009 and that it would probably last for at least five years [Tr. 530].   He stated that he had treated the Plaintiff since February 2009 [Tr. 530].   Dr. Cassada noted that he referred the Plaintiff to the University of Virginia on October 14, 2009, for locked facet syndrome.   [Tr. 530]. Dr. Cassada reported that the Plaintiff experienced (1) right neurogenic thoracic outlet syndrome; (2) traumatic head injury; and (3) cervical spine disease of a severe nature [Tr. 530].   In addition, Dr. Cassada noted that the Plaintiff received frequent brachial plexus treatments and a high dosage of narcotics [Tr. 531].   He stated that he saw the Plaintiff monthly and that the Plaintiff experienced an eight to ten level of pain on a ten-point scale [Tr. 531].   He stated that the Plaintiff's right arm was crippling and that "he cannot work at all due to treatments" [Tr. 531].[1]   Dr. Cassada reported that the Plaintiff would experience "flare-ups" ten times per day, seven

---

[1] Dr. Cassada adds another reason as to why the Plaintiff cannot work, but it is illegible [Tr. 531].

days a week [Tr. 531]. He also indicated that the Plaintiff needed rest, evaluation, drug injections, oral narcotics, neuropathic medication, and an arm sling [Tr. 530]. He concluded that the Plaintiff's "injuries are severe, work-related and have no clear end in sight" [Tr. 532].

The ALJ did not consider Dr. Cassada's January 5, 2011 opinion. The Commissioner asserts that it was not before the ALJ and that even if it had been, the ALJ's failure to address it should be deemed harmless. The Plaintiff argues that under the regulations, the deadline to submit evidence is the date of the ALJ's decision. The Plaintiff states that counsel submitted the January 5 opinion on January 20, 2011, and the ALJ's decision was issued on February 1, 2011 [Doc. 16 at 2]. He asserts that because that ALJ failed to address the opinion, the decision lacks substantial evidence.

The Commissioner responds that the Plaintiff is correct in that the official record closes once the ALJ has issued the decision but asserts that the date the record closes does not establish the deadline for submitting evidence [Doc. 17 at 1]. Instead, the Commissioner argues, that pursuant to 20 C.F.R. § 405.331(a), any written evidence must be submitted five business days before the date of the scheduled hearing [*Id.*]. The Commissioner states that the hearing was held on January 12, 2011, and the Plaintiff did not submit Dr. Cassada's opinion until January 20, 2011 [*Id.* at 2].

The Plaintiff filed a reply [Doc. 18-1] stating that the ALJ is required to make an affirmative exercise of his discretion to accept or reject late-filed evidence [Doc. 18-1 at 2]. He asserts that 20 C.F.R. § 405.331(a) does not "contemplate the Commissioner's

counsel raising the requirement as a post hoc rationale in court for rejecting evidence submitted prior to an ALJ's decision" [*Id.* at 2].

The Social Security regulations describe procedures for submitting evidence after the ALJ has conducted a hearing. In relevant part, § 405.331 states:

> (a) You should submit with your request for hearing any evidence that you have available to you. Any written evidence that you wish to be considered at the hearing must be submitted no later than five business days before the date of the scheduled hearing. If you do not comply with this requirement, the administrative law judge may decline to consider the evidence unless the circumstances described in paragraphs (b) or (c) of this section apply.
>
> (c) If you miss the deadline described in paragraph (a) of this section and you wish to submit evidence after the hearing and before the hearing decision is issued, the administrative law judge will accept the evidence if you show that there is a reasonable possibility that the evidence, alone or when considered with the other evidence of record, would affect the outcome of your claim, and:
>
>> (1) Our action misled you;
>>
>> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from submitting the evidence earlier; or
>>
>> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from submitting the evidence earlier.

20 C.F.R. § 405.331(a) and (c).

In *Passafiume v. Commissioner of Social Security*, the court addressed a similar situation with regard to whether the ALJ erred by not considering the treating physician's opinion. No. 1:12-cv-0795, 2012 WL 5611501, at *8-9 (N.D. Ohio Nov. 15, 2012). The

10

plaintiff submitted the treating physician's opinion six days after the hearing with a cover letter explaining that the opinion was brought to counsel's attention afterwards. *Id.* at *8. The cover letter also stated that the treating physician's opinion was consistent with the plaintiff's inability to perform work-related activities. *Id.* at *9. The court stated that "the cover letter to the ALJ arguably demonstrated a reasonable possibility that the evidence, alone or when considered with the other evidence of the record, would affect the outcome of the [plaintiff's] claim. *Id.* However, the court continued that the cover letter did "not satisfy any of the additional requirements of § 405.331 for submitting evidence after the hearing." *Id.* The court concluded that because the plaintiff did not meet the requirements of § 405.331, the ALJ was not required to consider the treating physician's assessment. *Id.* at *9.

In the present matter, Dr. Cassada's opinion is dated January 5, 2011. The hearing was held on January 12, 2011. The Plaintiff submitted Dr. Cassada's opinion on January 20, 2011, eight days after the ALJ's hearing. The ALJ's opinion is dated February 1, 2011, and it does not discuss Dr. Cassada's January 5 opinion.

The Court finds that the Plaintiff failed to satisfy the requirements of § 405.331, and therefore, the ALJ was not required to address Dr. Cassada's January 5 opinion. First, the Court notes that the regulation puts the burden on the claimant. *See* § 405.331(c) ("If you show") (emphasis added). Second, similar to *Passafiume*, the Plaintiff failed to demonstrate that he complied with the requirements. Dr. Cassada's January 5 opinion was not accompanied by an explanation as to whether there was a

11

reasonable possibility that the evidence would affect the outcome, nor was the opinion accompanied by an explanation satisfying the additional requirements of § 405.331. Accordingly, the Court finds that the ALJ was not required to consider Dr. Cassada's January 5 opinion because it was untimely submitted. However, because this matter is being remanded for other reasons (see below), the Court finds the ALJ should consider the January 5 opinion on remand.

## 2. May 22, 2010 Opinion

The Plaintiff argues that the ALJ erred when he gave no weight to Dr. Cassada's May 22, 2010 opinion and that the ALJ failed to follow the treating physician rule [Doc. 10 at 14-18].

The Commissioner responds that the ALJ considered Dr. Cassada's opinion and that the ALJ was not required to perform a factor-by-factor analysis [Doc. 15 at 6]. In addition, the Commissioner asserts that substantial evidence supports the ALJ's decision [*Id.* at 6-15]. Finally, the Commissioner asserts that even if the ALJ did not follow the treating physician rule, the error was harmless [*Id.* at 15].

On May 22, 2010, Dr. Cassada completed a physical capacities evaluation form for an insurance company [Tr. 493-94]. He opined that the Plaintiff could sit four hours a day, stand two hours a day, and walk one hour a day, but he could not drive [Tr. 493]. He also noted that the Plaintiff would need rest from sitting, standing, and walking [Tr. 493]. Dr. Cassada reported that the Plaintiff could occasionally lift items weighing ten pounds but that he could never lift any items over ten pounds [Tr. 493]. In addition, he

12

stated that the Plaintiff was able to kneel occasionally, but he could never climb, balance, stoop, crouch, crawl, reach, handle, finger, and feel [Tr. 494]. He stated that the Plaintiff had no problem using his feet [Tr. 494]. Finally, Dr. Cassada opined that the Plaintiff was unable to perform any type of work,[2] and he noted, "cannot function due to narcotics [and] frequent nerve blocks" [Tr. 494]. He concluded that the Plaintiff had reached his maximum for medical improvement [Tr. 494].

The ALJ discussed Dr. Cassada's opinions in detail [Tr. 26-27]. The ALJ noted that Dr. Cassada's conclusion with regard to the Plaintiff's disability was an administrative finding dispositive of a case, which requires familiarity with the regulations and legal standards [Tr. 26]. He added that opinions reserved to the Commissioner can never be entitled to controlling weight [Tr. 26]. The ALJ then discussed the May 22 physical capacities evaluation and opined that it was too restrictive and was not supported by the totality of the medical evidence [Tr. 26]. The ALJ continued that Dr. Blickenstaff, a specialist in occupational, preventive and internal medicine, opined that Dr. Cassada's May 22 restrictions contained no objective medical evidence and did not correspond to the evidence of record [Tr. 26-27]. Subsequently, the ALJ concluded:

> The undersigned assigns no weight to the opinion of Dr. David Cassada reported on insurance form assessments as they are too restrictive and are not supported by the totality of the evidence of the record. The undersigned finds that Dr. Cassada's statement that the claimant is 100% disabled is not

---

[2] Categories included sedentary, light, medium, heavy, and very heavy work. [Tr. 494].

13

> a medical opinion but an administrative finding dispositive of
> a case and that is a matter served to the Commissioner.

[Tr. 27].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(c)(2) and 416.927(c)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p,

1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

In the present matter, the ALJ found that Dr. Cassada's May 2010 assessment was inconsistent with the body of evidence and that it was too restrictive [Tr. 26]. In addition, he stated that Dr. Cassada's opinion that the Plaintiff was disabled is never entitled to controlling weight [Tr. 26]. While the ALJ does not specifically identify the "body of evidence" that is purportedly inconsistent with Dr. Cassada's opinion, it appears that the ALJ most heavily relied on the opinion by Dr. Blickenstaff, the non-examining specialist who testified at the hearing. However, the Sixth Circuit has cautioned courts that the Regulations require something more:

> Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion. Such a rule would turn on its head the regulations' presumption of giving greater weight to treating sources because the weight of such sources would hinge on their consistence with nontreating, nonexamining sources.

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013).

In addition, even if a treating physician's opinion is not entitled to controlling weight, the ALJ is supposed to give "good reasons" for the weight the opinion is given. *Id.* ("The failure to provide 'good reasons' for not giving [the treating physician's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician's rule that is at the heart of this regulation."). Here, the

15

ALJ failed to fully analyze the opinion pursuant to the statutory provisions. *See* 20 C.F.R. § 404.1527(c) and 416.927(c)(2). More specifically, the ALJ did not mention the length of treatment, frequency of examination, the nature and extent of the treatment relationship, Dr. Cassada's specialization, and the supportability of Dr. Cassada's opinion. Accordingly, the Court finds that the ALJ did not properly discuss the applicable statutory factors pursuant to 20 C.F.R. § 404.1527(c) and 416.927(c).

The Commissioner urges the Court to find that the ALJ's treatment of Dr. Cassada's opinion was harmless error. A violation of the good reasons rule can be deemed "harmless error" if

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possible credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation.

*Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (citation omitted). The Court does not find that any of these exceptions apply here. Upon review of the record, the Court does not find Dr. Cassada's opinion to be patently deficient, nor does the Court find that the ALJ adopted the opinion. Finally, because the ALJ's opinion does not sufficiently explain the reasons for his conclusion, the Commissioner cannot show that the ALJ has otherwise met the Regulation's goal.

The Court notes that a proper analysis of the record might not support giving controlling weight to Dr. Cassada's May 22 opinion. However, the Sixth Circuit "has made clear that [it] do[es] not hesitate to remand when the Commissioner has not

16

provided good reasons for the weight given to a treating physician's opinion." *Gayheart*, 710 F.3d at 380 (brackets in original) (quoting *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011)).

Accordingly, the Court finds that the ALJ did not properly discuss the applicable statutory factors pursuant to 20 C.F.R. §§ 404.1527(c), and the matter should be remanded for the ALJ to properly evaluate and discuss in his opinion the weight give to Dr. Cassada's opinion and the basis for that decision.

**B.      Plaintiff's Credibility**

The Plaintiff argues that the ALJ erred by not conducting the regulatory analysis with regard to the ALJ's credibility finding [Doc. 10 at 18].  In addition, he asserts that the ALJ did not consider his statements [*Id.*].

The Commissioner responds that the substantial evidence supports the ALJ's credibility finding and that the ALJ provided several reasons for finding that the Plaintiff's statements concerning his impairments were not entirely credible [Doc. 15 at 15-16].

In his decision, the ALJ stated that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extend they are inconsistent with the above residual functional capacity" [Tr. 27]. The ALJ continued that in arriving at the residual functional capacity, he considered the Plaintiff's subjective allegations [Tr. 27].  The ALJ stated that while the Plaintiff had several impairments that could reasonably be expected to cause some limitations, the

17

impairments could not cause limitations to the extent alleged [Tr. 27]. The ALJ noted that the Plaintiff made no statement of inability to complete routine personal needs [Tr. 27]. In addition, the ALJ stated that the evidence fails to substantiate the Plaintiff's allegations of total disability. The ALJ continued, "Thus, the undersigned finds that the claimant's allegations of disabling pain and other limitations are credible only to the extent that they are consistent with the established residual functional capacity" [Tr. 27]. Subsequently, the ALJ concluded, "In summary, based on a review of the medical evidence of record, as well as the claimant's testimony at the hearing and function reports submitted by the claimant, the undersigned finds that the evidence contained in the record does not support the claimant's allegations of totally incapacitating symptoms" [Tr. 28].

"In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." *Walters*, 127 F.3d at 531. In *Duncan v. Sec. of Health & Human Services*, 801 F.2d 847, 853 (6th Cir. 1986), the court articulated the standard for evaluating subjective complaints:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider

the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received for relief of pain or other symptoms; (vi) any measures used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 1529(c)(3).

The Court notes that the ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly because an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. However, the ALJ's finding must be supported by substantial evidence. *Id.* Finally, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.*

In the present matter, the Court finds that substantial evidence does not support the ALJ's credibility finding. The ALJ articulated two main reasons for discounting the Plaintiff. First, the ALJ stated that the Plaintiff made no statement of the inability to complete routine personal needs [Tr. 27]. The Commissioner concedes that this statement is inaccurate [Doc. 15 at 16]. For example, on the Plaintiff's pain questionnaire form, he stated, "The pain is a constant hind[]rance on my ability to perform everyday tasks[,] such as brushing my teeth and washing my hair" [Tr. 172]. In addition, at the hearing, the Plaintiff stated that when he tried to eat with his right hand,

19

he drops his fork [Tr. 42]. He also testified that taking showers were a big problem and that he only "showers about twice a week because it hurts" [Tr. 42]. He continued that it hurts to wash his hair and brush his teeth [Tr. 43]. Finally, he testified that it was difficult to wipe himself when using the bathroom [Tr. 43]. The Plaintiff thus made several statements with regard to his inability to complete routine personal needs.

The ALJ also stated that the "evidence fails to substantiate the claimant's allegations of total disability" [Tr. 27]. The Court is unsure as to what evidence the ALJ was referring. In addition, the ALJ failed to mention any of the statutory factors pursuant to 20 C.F.R. § 1529(c)(3).

Finally, the Court notes that in passing, the ALJ stated that the Plaintiff's testimony and function reports do not support his allegations of totally incapacitating symptoms [Tr. 28]. Again, however, the ALJ failed to explain what parts of the Plaintiff's testimony or what parts of his function reports were inconsistent with his allegations. A review of the testimony at the hearing shows that the ALJ only asked the Plaintiff basic questions about where he lives, who he lives with, how he spends his time at home, and what he does all day [Tr. 45-46].[3] In response to the ALJ's brief substantive questions, the Plaintiff testified that he is not able to do much, that he washes his own dishes, tries to clean-up after himself, watches television, gets on the Internet, and plays with his dogs [Tr. 45]. The same holds true with regard to his function reports. In his Disability Report, the Plaintiff reported difficulties with sitting, standing, walking, eating,

_____

[3] The Plaintiff's attorney asked most of the questions at the hearing. The ALJ asked the Plaintiff a few questions, and then Dr. Blickenstaff and the vocational expert testified.

drinking, lifting, concentrating, climbing, and so forth [Tr. 133]. Without an explanation from the ALJ, such conclusory and unsupported statements are of little use, and the Court cannot engage in a meaningful review. Accordingly, the Court finds the Plaintiff's argument well taken.

### C.     New and Material Evidence

The Plaintiff argues that new and material evidence submitted to the Appeals Council warrants remand for proper consideration [Doc. 10 at 19]. Specifically, the Plaintiff states that he submitted a letter from Dr. Naslund, dated on January 26, 2012, and the Appeals Council returned the evidence stating that the opinion related to a time after the ALJ's February 1, 2011 decision [*Id.*].

The Commissioner responds that the evidence submitted to the Appeals Council does not warrant remand [Doc. 15 at 17]. The Commissioner argues that the Plaintiff has failed to show good cause for submitting the evidence a year after the ALJ's decision, nor has he shown that the evidence is new or material [*Id.* at 18-19].

Thomas C. Naslund, M.D., examined the Plaintiff on January 26, 2012.[4] Dr. Naslund discussed the Plaintiff's previous job history, the Plaintiff's injury that occurred on December 22, 2006, and the Plaintiff's following treatment. Dr. Naslund noted that the Plaintiff experienced hand pain and that his hand had some swelling with "a bit of blueness in the fingertips and medial hand." In addition, he noted that the Plaintiff had "atrophy of the right arm, constant pain in the infraclavicular region with hypersensitivity

---

[4] Dr. Naslund's report was submitted as an attachment [Doc. 11-1].

21

of skin, [and] [h]is range of motion [was] massively reduced in his right upper extremity." Dr. Naslund stated that the Plaintiff experienced his best pain-free moment when he sits still, as his medications are most concentrated; however, once he moved around, the Plaintiff experienced severe pain. On examination, Dr. Naslund noted that the Plaintiff can abduct no more than 90 degrees on his right shoulder and that "this is with a substantial amount of discomfort." His flexion and extension was no more than 30 degrees at the shoulder. His triceps and biceps function was 4/5 and 5/5. In addition, his grip strength was 3/5 on the right, and his left upper extremity was normal. Dr. Naslund stated that the Plaintiff had a bluish hue to his index finger and medial hand, which blanched away quite easily and refilled pink.

Dr. Naslund concluded that the Plaintiff suffered from complex regional pain syndrome. He stated that his diagnosis had not been reported in the Plaintiff's records and that it was either the result of his injury or his first thoracic outlet surgery, but it was impossible to be certain which one caused the syndrome. His reason for this diagnosis is that the Plaintiff's pain syndrome was so severe after recovering from his thoracic outlet decommission that he was exposed to another operation and then a third operation. Dr. Naslund suggested a pain clinic and noted that the Plaintiff cannot return to work. Specifically, he stated, "When I factor in the lack of functional capability of his right upper extremity, his psychological state along with depressions/anxiety, and the discomfort induced by any type of movement that he suffers, I believe he will remain permanently disabled." Dr. Naslund summarized the Plaintiff's inability to perform daily

tasks without experiencing pain (i.e., eating, bathing, tying shoes). When Dr. Naslund told the Plaintiff his opinion, the Plaintiff burst into tears.

The Court may not consider new evidence in its substantive review of the ALJ's denial of benefits. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). However, pursuant to 42 U.S.C. § 405(g), the Court may "remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id.* (quoting *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). This is referred to as a "sentence six remand," and it requires all three elements. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). The proponent of the new evidence bears the burden of proof. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 589 (6th Cir. 2005). The Court will analyze whether the evidence is new, material, and whether the Plaintiff has shown good cause for not submitting the evidence earlier.

## 1. New Evidence

Evidence is considered new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster*, 279 F.3d at 357 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). "New evidence must indeed be new; it cannot be cumulative of evidence already in the record." *Pickard v. Comm'r of Soc. Sec.*, 224 F. Supp. 2d 1161, 1171 (W.D. Tenn. 2002) (quoting *Elliott v. Apfel*, 28 F. App'x 420, 424 (6th Cir. 2002)).

23

The Court finds that the Dr. Naslund's report is new. Dr. Naslund offers a new opinion that the Plaintiff actually suffers from complex regional pain syndrome, and this opinion is not duplicative of the other opinion in the record. The explanation as to why the Plaintiff experienced pain in the right extremity is new, and as a whole, Dr. Naslund's opinion is more detailed with regard to the Plaintiff's condition. Furthermore, it was not in existence when the ALJ issued his opinion. Accordingly, the Court finds Dr. Naslund's opinion is new.

### 2. Material Evidence

Evidence is material "only if there is a 'reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Foster*, 279 F.3d at 357 (quoting *Sizemore*, 865 F.2d at 711). In addition, "[e]vidence is material if it is probative of the claimant's condition during the time period at issue before the ALJ." *Pickard*, 224 F. Supp. 2d at 1171.

The Court finds that the evidence is material. Dr. Naslund's opinion is detailed and explains why the Plaintiff experienced pain in his right-upper extremity. The report explains the Plaintiff's history and his problems since his fall in 2006. The ALJ discredited Dr. Cassada's opinion because it was not consistent with the body of evidence. However, Dr. Naslund's report seems to support Dr. Cassada's opinion with regard to pain, although the Court offers no opinion on whether the Plaintiff is actually disabled pursuant to the Regulations. Furthermore, the ALJ also stated that the Plaintiff

did not make any statement with regard to his inability to perform personal care needs.[5] Dr. Naslund's opinion explains the Plaintiff's problems with performing personal care needs. Finally, the Commissioner argues that the examination was performed after the relevant period (i.e., the period on or before the ALJ's decision). However, Dr. Naslund's report discusses the Plaintiff's condition between his surgeries and his condition resulting therefrom. Accordingly, the Court finds that Dr. Naslund's report is material evidence.[6]

### 3. Good Cause

Good cause is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. "There mere fact that the evidence at issue was not in existence at the time of the ALJ's decision does not establish good cause." *Pickard*, 224 F. Supp. 2d at 1171. Further, "this circuit has taken a harder line on the good cause test." *Oliver v. Sec'y Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

The Plaintiff states that Dr. Naslund's opinion was obtained in conjunction with his worker's compensation action and was obtained by Traveler's Insurance as an

---

[5] As mentioned above, this statement was inaccurate because the Plaintiff explained several times that he had difficulties with personal care needs.

[6] The Court notes, however, that Dr. Naslund's opinion with regard to the Plaintiff's depression and anxiety is immaterial. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 277 (6th Cir. 2010) (stating that evidence of a deteriorating condition is immaterial because it does not speak to the claimant's condition at the relevant time). The Plaintiff did not allege a mental impairment, and Malcolm Spica, Ph.D., stated that the Plaintiff experienced subclinical Adjustment Disorder with depressed mood but that he did not meet the full diagnostic criteria for the condition [Tr. 412].

independent medical exam. The Plaintiff argues that he did not submit this report earlier because he had no control over the scheduling of this exam and that he could not afford to obtain a similar exam earlier.

The Court finds that the Plaintiff has not established good cause for submitting Dr. Naslund's report almost a year after the ALJ's decision. While the Plaintiff argues that he could not afford the exam, he has not substantiated his claim of indigency. As mentioned above, the Plaintiff bears the burden to prove good cause. *Longworth*, 402 F.3d at 589; *see also Ramos v. Soc. Sec. Admin.*, No. 1:06-cv-645, 2007 WL 6139972, at *2 (W.D. Mich. Nov. 26, 2007) (stating that the plaintiff failed to show good cause because he did not submit a financial affidavit to substantiate his claim that he could not afford an examination). The Court also notes that it denied [Doc. 3] the Plaintiff's application to proceed *in forma pauperis* based on the Plaintiff's bank account balances, rental income, and equity in his house. Finally, other courts have stated that a claimant's indigency does not show good cause. *See Walton v. Astrue*, 773 F. Supp. 2d 742, 753 (N.D. Ohio 2011) (stating that the plaintiff's "limited finances and lack of health insurance does not excuse his failure to timely either acquire or present the evidence to the ALJ").

The Plaintiff also argues that this exam was obtained for his worker's compensation action and that he had no control over the scheduling. While that may be true, the record submitted to the ALJ already contained an examination that was obtained for his worker's compensation claim [Tr. 479-84]. Furthermore, the Plaintiff did not

request that the administrative record be kept open. *See Smith v. Comm'r of Soc. Sec.*, 473 F. App'x 443, 446 (6th Cir. 2012) (stating that the plaintiff "did not ask that the administrative record be kept open and he has not established good cause for failing to acquire this evidence in time to present it to the ALJ"). Accordingly, the Court finds that the Plaintiff has not shown good cause for submitting Dr. Naslund's report almost a year after the ALJ's decision. However, since this matter is being remanded for other reasons, the Court finds the ALJ should consider Dr. Naslund's report.

## VI. CONCLUSION

Accordingly, for the reasons explained herein, the Court **GRANTS** [Doc. 9] the Plaintiff's Motion for Summary Judgment and **DENIES** the Commissioner's Motion for Summary Judgment [Doc. 14]. This case is **REMANDED** to the Commissioner, and upon remand, the ALJ shall (1) provide good reasons for the weight given to Dr. Cassada's May 22 opinion; (2) discuss and weigh Dr. Cassada's January 5, 2011 opinion; (3) reanalyze the Plaintiff's credibility; and (4) discuss and weigh Dr. Naslund's opinion.

IT IS SO ORDERED.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE


ENTERED AS A JUDGMENT

s/ Debra C. Poplin
CLERK OF COURT

27